**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | **CASE NO.   1:04 CR 567** |
| | ) | |
| **PLAINTIFF** | ) | **JUDGE PETER C. ECONOMUS** |
| | ) | |
| **v.** | ) | |
| | ) | **MEMORANDUM OPINION** |
| **JEFFREY J. MOFFIE,** *et al.* | ) | **AND ORDER** |
| | ) | |
| **DEFENDANTS** | ) | |

This matter is before the Court upon the Government's Motion *In Limine* Re Admissibility of Portions of Deposition Transcript of Defendant Jeffrey J. Moffie, see (Dkt. # 34), and Defendant Delgado's Motion to Sever, see (Dkt. # 36).

**I.    BACKGROUND**

The facts, as alleged by the Government, are as follows. The defendants, Jeffrey J. Moffie ("Moffie") and Dale M. Delgado ("Delgado"), began operating a lending consulting business in 1993 known as Cambridge Investment Group ("Cambridge"). See (Dkt. # 1 ¶ 3). Later that year, the defendants and Gary Cerasi ("Cerasi"), a certified public accountant, formed WWM, Inc. ("WWM") for the stated purpose of assisting clients in obtaining business loans from financial institutions.[1] See (Dkt. # 1 ¶¶ 4, 5).

---

[1] The Government filed an Information against Cerasi on November 19, 2004 charging one count of bank fraud, a violation of 18 U.S.C. § 1344. See United States v. Gary Cerasi, 1:04CR00581. Cerasi and the Government entered into a plea agreement on February 2, 2005 whereby Cerasi entered into a plea of guilty to the charge.

-1-

The defendants thereafter implemented their Leveraged Assert Program ("LAP") for the purpose of assisting clients with obtaining loans. See (Dkt. # 1 ¶¶ 5-6). Pursuant to the LAP, the defendants purchased on behalf of their clients treasury bonds or other low risk securities such as Federal National Mortgage Association stock or securities and Federal Home Loan Association stock or securities, with a payment of ten percent of the purchase price (commonly referred to as purchasing "on the margin"). See (Dkt. # 1 ¶ 6). A securities dealer meanwhile held the securities in a "margin account" where such securities had the market value reduced by the amount due and owing on the purchase price. See (Dkt. # 1 ¶ 6).

In order to obtain funding for the purpose of purchasing the securities, the defendants' clients entered into an agreement with WWM whereby WWM agreed to loan the clients an amount equal to the purchase price of the securities plus ten percent. See (Dkt. # 1 ¶ 9). However, WWM provided no funds to the clients and the securities remained in a securities dealer's brokerage account managed by the defendants. See (Dkt. # 1 ¶¶ 7,9).

The defendants' clients thereafter attempted to secure business loans from Bank One, N.A. ("Bank One"). See (Dkt. # 1 ¶ 7). In order to facilitate the loan transactions, the defendants reported to Bank One that Cambridge held the securities for the clients and pledged that Cambridge would hold such securities for Bank One as collateral for the loans. See (Dkt. # 1 ¶ 7). The defendants further reported to Bank One that the clients owned the securities free and clear; that is, without any balance due and owing on the purchase price. See (Dkt. # 1 ¶ 7).

Between January 20, 1994 and November 7, 1994, five clients utilized the LAP to obtain loans from Bank One:

January 20, 1994 - J.A. Pena Company in the amount of $27,000.00

March 2, 1994 - Delta Finishers in the amount of $347,000.00

July 1, 1994 - 15449 Euclid Avenue, Inc. in the amount of $680,000.00

November 2, 1994 - Gary Cerasi in the amount of $54,000.00

November 7, 1994 American Innovation Marketing, Inc. ("AIM") in the amount of $724,000.00

Two of the foregoing loans – those issued to 15449 Euclid Avenue, Inc. and AIM – subsequently went into default. See (Dkt. # 1 ¶ 11). Aa result of the securities of the defendants' clients being unavailable as collateral, Bank One ultimately suffered substantial losses on the loans. See (Dkt. # 1 ¶ 11).

In an attempt to recover assets from AIM (*aka* "Pyromid"), Bank One initiated an action in the Court of Common Pleas, Cuyahoga County, Ohio styled, Bank One, N.A. v. Pyromid, Inc.,Case No. 346046. See (Dkt. # 34). During those proceedings, Bank One issued a subpoena to Moffie ordering him to appear for a deposition pursuant to Rule 69 of the Ohio Rules of Civil Procedure.[2] See (Dkt. # 34).

Moffie appeared for the deposition on March 19, 1998 represented by counsel. See

---

[2]Rule 69 of the Ohio Rules of Civil Procedure provides:
 Process to enforce a judgment for the payment of money shall be a writ of execution, unless the court directs otherwise. The procedure on execution, in proceedings supplementary to and in aid of a judgment, and in proceedings on and in aid of execution shall be as provided by law. In aid of the judgment or execution, the judgment creditor or his successor in interest when that interest appears of record, may also obtain discovery from any person, including the judgment debtor, in the manner provided in these rules.

Presumably, Bank One obtained a judgment against Pyromid thereby prompting the Rule 69 deposition.

(Dkt. # 34 & Gov't's Ex. # 7).  Moffie testified as to the details of the LAP, including that his clients purchased the securities on the margin and Bank One was not notified of the margin purchase.  See (Gov't's Ex. # 7 at 102).

On November 17, 2004, the Grand Jury of the United States District Court for the Northern District of Ohio issued an Indictment charging the defendants with one count of conspiracy to commit bank fraud in violation of 18 U.S.C. § 1344 as proscribed by 18 U.S.C. § 371 ("Count I"), and three counts of devising a scheme to commit bank fraud in violation of 18 U.S.C. § 1344 and aiding and abetting in violation of 18 U.S.C. § 2 ("Counts II-IV").  See (Dkt. # 1).

The instant motions ensued.

## II.    LAW AND ANALYSIS

### A.    The Government's Motion *In Limine*

The Government requests a preliminary evidentiary ruling regarding the admissibility of Moffie's civil deposition testimony.  See (Dkt. # 34).  The Government specifically asserts that Moffie's prior deposition testimony constitutes a party-admission pursuant to Rule 801(d)(2)(A) of the Federal Rules of Evidence and thereby is admissible at trial.  See (Dkt. # 34 at 5).

Rule 801(d)(2) provides, in pertinent part:

(d) Statements which are not hearsay.  A statement is not hearsay if –

   (2) Admission by party-opponent.  The statement is offered against a party and is (A) the party's own statement in either an individual or a representative capacity or (B) a statement of which the party has manifested an adoption or belief in its truth, or (C) a statement by a person authorized by the party to make a statement concerning the subject, or (D) a statement by the party's agent or

>servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship, or (E) a statement by a coconspirator of a party during the course and in furtherance of the conspiracy. The contents of the statement shall be considered but are not alone sufficient to establish the declarant's authority under subdivision (C), the agency or employment relationship and scope thereof under subdivision (D), or the existence of the conspiracy and the participation therein of the declarant and the party against whom the statement is offered under subdivision (E).

FED. R. EVID. 801 (d)(2).

The issue as to whether a defendant's prior deposition testimony in a state civil action constitutes a party-admission under FED. R. EVID. 801(d)(2)(A) in a subsequent federal criminal proceeding is a matter of first impression for this Court. The United States Court of Appeals for the Sixth Circuit likewise has not addressed the issue.

The Court therefore shall commence its analysis by turning to the text of the Rule. See generally United States v. Wells, 519 U.S. 482, 490-92 (1997) (establishing a "three-step framework by which courts should interpret statutes: first, a natural reading of the full text; second, the common-law meaning of the [] terms; and finally, consideration of the statutory and legislative history for guidance"). The plain text of Rule 801 (d)(2)(A) lacks any limiting language precluding the use of a party's prior deposition testimony during a pending criminal matter. Indeed, the Rule refers to a party's own "statement" which is expressly defined as "an oral or written assertion," FED. R. EVID. 801(a). It is beyond cavil that deposition testimony constitutes a "statement" pursuant to Rule 801 (d)(2)(A).

Courts examining the text of Rule 801(d)(2)(A) have concluded that prior deposition testimony given in a civil matter may be offered against the party-declarant in a subsequent criminal proceeding. See United States v. Veltmann, 6 F.3d 1483, 1500-01 (11th Cir.

-5-

1993) ("Statements made in a civil deposition arising out of the same facts as a criminal prosecution are admissible as admissions when offered against the declarant."); United States v. Jenkins, 785 F.2d 1387, 1393 (9th Cir. 1986) ("Because White's statements at the deposition were voluntary, they were clearly admissible against him as party admissions under Federal Rule of Evidence 801(d)(2)(A).") (Citations omitted),cert. denied sub nom., Prock v. United States, 479 U.S. 855(1986), and cert. denied sub nom., White v. United States, 479 U.S. 889 (1986). This Court joins the foregoing precedent and holds that prior civil deposition testimony is admissible as a party-admission pursuant to Rule 801 (d)(2)(A) where it is offered against the defendant-declarant in a subsequent criminal proceeding.

Moffie appears to concede that his prior statements constitute admissions pursuant to Rule 801 (d)(2)(A). However, he offers two alternative theories for suppressing the deposition transcripts: (1) the deposition was not signed as required by Rule 30(E) of the Ohio Rules of Civil Procedure; and (2) the

> Rule 30 (E) of the Ohio Rules of Civil Procedure, provides:
>
> When the testimony is fully transcribed, the deposition shall be submitted to the witness for examination and shall be read to or by the witness, unless examination and reading are waived by the witness and by the parties. Any changes in form or substance that the witness desires to make shall be entered upon the deposition by the officer with a statement of the reasons given by the witness for making them. The deposition shall then be signed by the witness, unless the parties by stipulation waive the signing or the witness is ill, cannot be found, or refuses to sign. If the deposition is not signed by the witness within seven days of its submission to the witness, or within such longer period, not exceeding twenty-eight days, to which the parties agree, the officer shall sign it and state on the record the fact of the waiver or of the

-6-

> illness or absence of the witness or the fact of the refusal to sign together with the reason, if any, given therefore; and the deposition may then be used as fully as though signed, unless on a motion to suppress the court holds that the reasons given for the refusal to sign require rejection of the deposition in whole or in part.

OHIO R. CIV. P. 30 (E). The record before the Court indicates that Moffie neither signed nor waived his signature of the deposition. See (Gov't's Ex. # 7 at 108). Moffie contends that these omissions require the Court to suppress the deposition testimony.[3] See (Dkt. # 41).

Ohio and federal law vest the trial court with sound discretion to permit the use of an unsigned deposition where it appears to the court that there was no good reason for the deponent's refusal to sign the deposition, or where the opposing party cannot show inaccuracies in the deposition or prejudice arising from its introduction into evidence. See Vukadinovich v. Zentz, 995 F.2d 750, 754 (7th Cir. 1993) (citing United States v. Campbell, 845 F.2d 1374, 1379 (6th Cir.), cert. denied, 488 U.S. 908 (1988)); Jelen v. Price, 9 Ohio App. 3d 174, 175, 458 N.E.2d 1267 (Ohio 8th App. Dist. 1983). Moffie asserts that introduction of his deposition testimony is prejudicial because such testimony was made under cross-examination and would require him at trial to waive his Fifth Amendment right against self-incrimination in order to explain his statements. See (Dkt. # 41 at 4-5). Moffie further asserts that the questions posed during the deposition "were misleading and were intended to elicit potentially prejudical answers from him." (Dkt. # 41 at 5.)

---

[3] It is noteworthy that the Government advised the defendants on December 22, 2004 and March 31, 2005 of its intent to introduce the deposition testimony, see (Dkt. # 34 at 2); however, Moffie did not file a motion to suppress, apparently relying on the opportunity to respond to the Government's motion in limine.

The challenges advanced by Moffie fail to compel the suppression of the deposition testimony.[4]  As a threshold matter, trustworthiness is not a separate requirement for admission under Rule 801(d)(2)(A).  See Jewell v. CSX Transp., 135 F.3d 361, 365 (6th Cir. 1998) (citing United States v. Pinalto, 771 F.2d 457, 459 (10th Cir. 1985)).  "The admissibility of statements of a party-opponent is grounded not in the presumed trustworthiness of the statements, but on 'a kind of estoppel or waiver theory, that a party should be entitled to rely on his opponent's statements.'"  Id. (quoting United States v. DiDomenico, 78 F.3d 294, 303 (7th Cir. 1996)).  As noted in the advisory committee notes to Rule 801(d)(2)(A), admissions by a party-opponent are excluded from the category of hearsay "on the theory that their admissibility in evidence is the result of the adversary system rather than satisfaction of the conditions of the hearsay rule."  FED. R. EVID. 801 advisory committee's note.

> No guarantee of trustworthiness is required in the case of an admission.  The freedom which admissions have enjoyed from technical demands of searching for an assurance of truthworthiness in some against-interest circumstance, and from the restrictive influences of the opinion rule and the rule requiring firsthand knowledge, when taken with the apparently prevalent satisfaction with the results,  calls for generous treatment of this avenue to admissibility.

Id.  Consequently, Moffie's contentions that the challenge testimony was made under cross-examination and resulted from improper questioning are without legal significance.  Simply, Moffie does not deny making the statements.  Moreover, Moffie waived his Fifth

---

[4]Moffie appears to have the impression that the Government seeks the introduction into evidence of the entire deposition.  However, as discussed *infra*, the Government has advised that it will introduce a redacted version of Moffie's deposition into evidence by having one of its witnesses read the statements into the record.  See (Dkt. # 34 at 4).

Amendment right against self-incrimination regarding the testimony by not asserting the privilege during the deposition. See Minnesota v. Murphy, 465 U.S. 420, 427 (1984) ("'In the ordinary case, if a witness under compulsion to testify makes disclosures instead of claiming the [Fifth Amendment] privilege, the government has not 'compelled' him to incriminate himself.'") (Quoting Garner v. United States, 424 U.S. 648, 654 (1976)); United States v. Kordel, 397 U.S. 1, 12-13 (1970) ("[A]failure at any time to assert the constitutional privilege leaves him in no position to complain now that he was compelled to give testimony against himself."), cert. denied sub nom., Forde v. United States, 488 U.S. 974 (1988)); Jenkins, 785 F.2d at 1393 ("The privilege may still be asserted at the proceeding and must be to avoid waiver of the privilege.").

Moffie alternatively argues that the unfair prejudice created by admitting his deposition testimony at trial substantially outweighs the probative value of the evidence. See (Dkt. # 41 at 6). Under Federal Rule of Evidence 402, "evidence not relevant is inadmissible." FED. R. EVID. 402. Federal Rule of Evidence 401 defines relevant evidence as including "evidence having any tendency to make the existence of a fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." FED. R. EVID. 401. Federal Rule of Evidence 403 provides that although relevant, "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . ." FED. R. EVID. 403. "[U]nfair prejudice, as used in Rule 403, does not mean the damage to a defendant's case that results from the legitimate probative force of the evidence: rather, it refers to evidence which tends to suggest decision on an improper

basis." United States v. Schrock, 855 F.2d 327, 335 (6th Cir. 1988) (quotation omitted) (noting that examples of improper bases include jury hostility or jury sympathy).

The Government asserts that Moffie's deposition testimony is relevant as it tends to demonstrate Moffie's "background, knowledge and experience in connection with the operation of his business . . .Cambridge Investment Group, and the details of the transactions involving his clients as borrowers of Bank One" (Dkt. # 34 at 4-5.) The Government contends that such evidence "bears again upon the core issue of criminal intent and knowledge." (Dkt. # 34 at 5). Moffie responds that the "testimony does not present evidence of the wilfulness element of the offenses charged, as the Government asserts." (Dkt. # 41 at 7.)

The Government must prove three elements in order to prove the bank fraud violations charged in the Indictment: "(1) that the defendant[s] knowingly executed or attempted to execute a scheme to defraud a financial institution; (2) that the defendant[s] did so with the intent to defraud; and (3) that the financial institution was insured by the FDIC." United States v. Everett, 270 F.3d 986, 989 (6th Cir. 2001). The essential elements of the crime of conspiracy under 18 U.S.C. § 371 are: "(1) that the conspiracy described in the indictment was willfully formed, and was existing at or about the time alleged; (2) that the accused willfully became a member of the conspiracy; (3) that one of the conspirators thereafter knowingly committed at least one of the overt acts charged in the indictment at or about the time and place alleged; and (4) that such over act was knowingly done in furtherance of some object or purpose of the conspiracy as charged." United States v. Miller, 161 F.3d 977, 985 (6th Cir. 1998) (internal citations omitted). "The essential

elements of aiding and abetting are (1) an act by the defendant that contributes to the commission of the crime, and (2) an intention to aid in the commission of the crime." United States v. Davis, 306 F.3d 398, 412 (6th Cir. 2002), cert. denied, 537 U.S. 1208 (2003).

Moffie's deposition testimony sets forth in detail the efforts that he made on behalf of Cambridge to secure loans from Bank One. It is these efforts which provide the overt acts underlying the conspiracy and bank fraud charges advanced in the Indictment. Therefore, it cannot be reasonably disputed that the deposition testimony presents relevant, admissible evidence. Indeed, Moffie's response to the motion *in limine* identifies (albeit unintentionally) a significant amount of deposition testimony that is directly relevant to the charges at issue. See (Dkt. # 41 at 8-9).

Notwithstanding the relevancy of the deposition testimony, the Court must consider whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice or confusion of the issues. See FED. R. EVID. 403. Moffie contends that he will suffer prejudice upon jury's hearing of the deposition testimony is three ways: (1) the jury will consider "inflammatory" issues raised in the deposition testimony; (2) the jury will draw a negative inference from Moffie's refusal to answer many of the questions posed during the deposition; and (3)the jury will hear confusing evidence regarding whether Bank One was aware the securities were purchased on the margin. See (Dkt. # 41 at 7-9).

Moffie's claims of prejudice and confusion require little analysis. The "inflammatory" and "confusing" issues referred to by Moffie consist of facts pertaining to the underlying elements of the charge. While these facts are detrimental to Moffie's

-11-

defense, they do not rise to the level of prejudice or confusion required for exclusion under Rule 403. See United States v. Weinstock, 153 F.3d 272, 278 (6th Cir. 1998) ("If all evidence adverse to a defendant was subject to exclusion under Rule 403, then no government evidence would ever be deemed admissible. The test under Rule 403 is not whether the evidence is detrimental, but whether it is so unfairly prejudicial as to substantially outweigh its probative value."). Similarly, the redacted deposition testimony presented to the Court reveals no instance where the Government attempts to introduce statements where Moffie refused to answer a question.

Accordingly, the Court finds that Moffie's prior civil deposition testimony is admissible as a party-admission pursuant to Rule 801(d)(2)(A) to the extent it will be offered against Moffie. However, as Moffie disputes the authenticity of the deposition testimony, it shall be admitted into evidence only upon proper authentication pursuant to Rule 901 of the Federal Rules of Civil Procedure.

### B. Delgado's Motion to Sever

The issue remains as to the potentially prejudicial impact that Moffie's deposition testimony may have on alleged co-conspirator Delgado. Delgado contends that this potential prejudice requires that the Court sever the trials. See (Dkt. # 36).

Under the Federal Rules of Criminal Procedure, defendants may be tried together "if they are alleged to have participated in the same act or transaction," FED. R. CRIM. P. 8(b), and indeed "there is a preference in the federal system for joint trials of defendants who are indicted together." Zafiro v. United States, 506 U.S. 534, 537 (1993). Once joined, "'severance is required only if there is a serious risk that a joint trial would

compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence.'" United States v. Walls, 293 F.3d 959, 966 (6th Cir. 2002) (quoting Zafiro, 506 U.S. at 539).

Delgado asserts that severance of the trials is required "[b]ecause Defendant Moffie will not testify at trial[; therefore,] Mr. Delgado's right to cross-examination of an inculpatory witness will be violated." (Dkt. # 36 at 4.) In Bruton v. United States, 391 U.S. 123 (1968), the United States Supreme Court held that the admission of a non-testifying codefendant's confession at a joint trial may violate a defendant's confrontation rights even when the jury is instructed to consider the confession only against the codefendant. Id. at 137. The Bruton rule, the Court has noted, rests on the concern that a co-defendant's confession can be so "powerfully incriminating" that jurors may be unable to refrain from attributing it to the defendant as well. See Richardson v. Marsh, 481 U.S. 200, 207 (1987). The Court recently re-interpreted the Sixth Amendment's Confrontation Clause to require that all "testimonial, out-of-court statements offered against the accused to establish the truth of the matter asserted may only be admitted where the declarant is unavailable and where the defendant has had a prior opportunity to cross-examine the declarant." Crawford v. Washington, 541 U.S. 36 (2004). Crawford requires the Court to first determine whether the proffered statement is testimonial in nature and second whether it is offered as hearsay. See United States v. Pugh, Nos. 03-3241/3243 (6th Cir. May 3, 2005).

In the wake of Crawford, the federal courts have been faced with defining the precise contours of a "testimonial" statement. See United States v. Cromer, 389 F.3d 662, 674 (6th Cir. 2004) ("Since Crawford, other Circuits have begun to work toward developing a

more comprehensive definition of 'testimonial.'"); cf. United States v. Saget, 377 F.3d 223, 229-30 (2d Cir. 2004) ("We . . .conclude that Beckham's statements to the CI were not testimonial, and Crawford does not bar their admission."). One court expressly has declined to address whether deposition testimony provided in a prior civil proceeding constitutes a "testimonial" out of court statement for Crawford purposes. See United States v. Holmes, No. 03-41738, 2005 U.S. App. LEXIS 5606 at *18 (5th Cir. Apr. 6, 2005) ("This case does not, however, require resolution of whether Gonzalez's civil deposition qualifies as testimonial evidence triggering the right to confrontation.").

This Court need not wade into the Crawford morass as the statements presented in Moffie's deposition testimony do not prejudice Delgado. Bruton's (and now Crawford's) "narrow exception" to the "almost invariable assumption of the law that jurors follow their instructions," Marsh, 481 U.S. at 206-07, applies only when a "codefendant's confession (or in the words of Crawford, the co-defendant's "testimonial, out-of court statement") 'expressly implicates' the defendant as his accomplice." id. at 208 (quoting Bruton, 391 U.S. at 124 n.1); see also United States v. Sherlin, 67 F.3d 1208, 1215 (6th Cir. 1995).

Here, Moffie's deposition testimony does not expressly implicate Delgado as a participant in the charged offenses. Specifically, in preparation for trial, the Government redacted all references to Delgado and provided complete, as well as redacted, versions of the deposition to the defendants. See (Dkt. # 34 at 2-3). In addition, the Court has reviewed the proffered statements and redacted from the deposition any reference to "we" or to "Cambridge" which potentially could be interpreted by the jury as referring to Delgado. See (Gov't's Ex. # 7 at  15, 30, 31, 34, 36, 37, 66). Moreover, the proffered statements are

posed in a question-and-answer form and repeatedly are limited to Moffie's personal knowledge, conduct, and, or observations. See, e.g., (Gov't's Ex. # 7 at 16-18, 22-23, 29, 31-32, 39-40, 49, 60-62, 64, 68-69, 78, 85-87, 93-94, 97-98, 101-102). Furthermore, the Court will issue a limiting instruction to the jury upon admitting Moffie's prior statements. Simply, where, as here, a codefendant's statement is "not facially incriminating of [the defendant] and could only have been incriminating when linked with other evidence, [the] redacted statement [does] not pose Bruton problems." Sherlin, 67 F.3d at 1216. Accordingly, the motion to sever on Bruton grounds, see (Dkt. # 36), is **DENIED**.

### III. CONCLUSION

For the foregoing reasons, the Court hereby orders that the Government's Motion *In Limine* Re Admissibility of Portions of Deposition Transcript of Defendant Jeffrey J. Moffie, see (Dkt. # 34), is **GRANTED IN PART and DENIED IN PART**. The deposition of Jeffrey Moffie (Gov't's Ex. # 7) shall be admitted at trial subject the redactions presented by the Court. The Court further orders that Defendant Delgado's Motion to Sever, see (Dkt. # 36) is **DENIED**.

**IT IS SO ORDERED**.

**/s/ Peter C. Economus - May 11, 2005**
PETER C. ECONOMUS
UNITED STATES DISTRICT JUDGE